IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 13-64-RGA |
| | ) | |
| JAMES WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER

Defendant has filed a motion to suppress. (D.I. 54). It seeks to suppress the fruits of a search of Defendant's residence pursuant to a warrant (Mag. Case No. 13-99M) and the fruits of searches of five cellular telephones pursuant to a warrant. (Mag. Case No. 13-101M). The motion also seeks to suppress the fruits of a search incident to the arrest of Defendant.

According to the search warrant return in the Court's file in Mag. Case No. 13-99M, agents executing the search at the residence seized one "black bag," one "jar with green leafy substance," two "jars," a "quantity of United States Currency (USC)," one "letter envelope," one "bag of No Dose – bag w/ white substance," two "digital scales," "misc. documents," two "cell phones w/ charger," one "set of keys," and two "cell phones." The United States in its memo provides a similar description of what was seized, including the information that the currency consisted of $5,672 genuine currency and $8,820 in counterfeit currency. (D.I. 55 at 6). There is

1

no search warrant return in the Court's file relating to the second search warrant,[1] although there is an Application and Order concerning obtaining a manufacturer's assistance in unlocking a cellular phone that "is the subject of [the] search warrant." The Order is dated October 14, 2013.

The motion to suppress states, in conclusory form, that the two search warrants were "not based on probable cause," (D.I. 54, ¶¶ 9 & 10), that the two search warrants were "general warrants," (*Id.*, ¶ 11), that the search of Defendant's person was "without reasonable suspicion or untainted probable cause to arrest," and that the second search warrant was thus also "fruit of the poisonous tree." (Id., ¶ 8). In the accompanying memo, Defendant only presses two points: (1) that some of the items sought by the search warrants were not supported by probable cause (that is, items relating to drug trafficking and gang membership); and (2) the two warrants were "general warrants." In support of the second argument, Defendant relies upon *United States v. Fleet Management Ltd.*, 521 F.Supp. 2d 436 (E.D. Pa. 2007).

The Government filed an Opposition, in which it identified three pieces of evidence that it intends to use at trial, namely, from the residence search, the United States currency and a car key tag (further described as the keys to a particular car that the Government wishes to associate with Defendant), and from the search of one of the cellular phones, "a text message that contained a picture of five of the stolen firearms." (D.I. 55 at 2). The Government specifically disclaims an intention to use what might be called the drug trafficking evidence seized from the search of the residence. (*Id.* at 11 n.4). The Government's description necessarily also means

---

[1] The United States is requested to advise whether one of its agents did a search warrant return, and, if so, to provide a copy of it. If no agent did a search warrant return, the United States is requested to explain why not, and, if one was required to have been done (as I expect was the case), to make such a return.

2

that it intends to use the cellular phone that contained the incriminating text message.

Defendant filed a "Response" to the Government's Opposition. (D.I. 60). It is twelve pages long -- twice as long as the original motion to suppress. It covers the same ground as the original motion, but also raises arguments in support of its theories that were not raised in the original motion.

It appears as though Defendant was arrested without a warrant more or less contemporaneously with the execution of the residence search warrant, and the one of the five cellular phones was seized from his person. I cannot tell from the papers submitted which of the five phones was the one that had the incriminating text message.

The residence search warrant affidavit establishes more than sufficiently that there was probable cause to believe Defendant committed various federal firearms offenses, including possession of a firearm by a felon, possession of stolen firearms, and trafficking in firearms. In addition, it establishes a reasonable basis to believe that the residence was Defendant's residence (Affidavit, ¶¶ 20-22), and that evidence of firearms offenses would be found there. (Affidavit, ¶¶ 24-26). Defendant specifically omits reference to the firearms-related "items to be seized" when cataloguing the warrant's deficiencies. (D.I. 54, Memo, pp. 2-3). Although the request to seize cellular phones appears in the drug section of the items to be seized, cellular phones are identified in the affidavit as being equally relevant to firearms trafficking. (Affidavit, ¶¶ 25 & 26). The evidence for some of the other items to be seized is thinner, but there is some evidence for seizure of all the items other than the prescription pain medication. For example, there is evidence – the wearing of the red sweatshirt – that suggests Defendant's membership in the

Bloods, and evidence that Defendant distributed two ounces of cocaine.[2]

Thus, if there is any problem with the residential search warrant, it is that it is a little overbroad. The remedy for that, however, is not to suppress all the evidence, but to suppress just those seized items that result from the overbroad portions. *See United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982). The only things that were seized pursuant to the firearms-related probable cause were the four cellular phones, one of which might be the source of the text message. Thus, I will not suppress the four cellular phones seized pursuant to the warrant (or the one phone seized pursuant to the search incident to arrest, as there was probable cause for the arrest). As for the cash and the car key tag, it seems as though they were seized as being in plain view, although neither party addresses that in their submissions. In any event, since Defendant does not challenge the execution of the search warrant, there is, in my opinion, no basis to suppress the seizure of the cellular telephones, the cash, and the car key tag.

In regard to the residential search warrant, Defendant argues that it is a general warrant, because the use of "including but not limited to" places no limitations on the things to be seized. One has to read the "items to be seized" in context. It specifies six related firearms offenses as

---

[2] In Defendant's Response, Defendant appears to concede that there was probable cause to believe that Defendant had violated one federal firearms statute (felon in possession) but argues that there was no probable cause on any of the other recited crimes. (D.I. 60 at 3). I disagree, at least as to most of the listed crimes. For example, there is evidence that the stolen firearms were paid for in part with two ounces of cocaine, which would be a violation of 18 U.S.C. § 924(c). From the circumstances of the transaction, it could be inferred Defendant knew the firearms were stolen. Further, given the number of firearms involved in the transaction, Defendant would have been aiding and abetting the conduct of a firearms business without a license. On the other hand, I am not sure there is any evidence that Defendant conspired to steal firearms from a licensed firearms dealer. In my opinion, however, the conspiracy to steal from a firearms dealer was simply redundant of the other listed crimes in terms of the issues raised by the motion to suppress.

the offenses to which the items relate, which narrows the scope of the search. *See United States v. Yusef*, 461 F.3d 374, 395 (3d Cir. 2006). It then further limits the search by defining five reasonably particular categories of things that would constitute "fruits, evidence and/or instrumentalities" of the six enumerated crimes. It is not a general warrant.[3]

Thus, I will not grant the motion to suppress as it relates to the seizure of the cash, the car key tag, and the five cellular phones.

The second warrant suggested that maybe it was not needed. (Affidavit, ¶ 5). The Government's caution in proceeding to search the cell phones without a warrant proved prescient. *See Riley v. California*, 134 S.Ct. 2473 (2014) (requiring a warrant when cell phone seized incident to arrest). It was needed.[4]

A fair reading of the "items to be seized" (or "Attachment B") is that the cell phones can be searched as fully as possible to seize:

> the following items that, as described in the above application, constitute fruits, evidence and instrumentalities of violations of [four specified federal firearms statutes], [conspiracy to commit an offense against the United States and aiding and abetting the commission of a federal offense], including but not limited to:
> 1. [All names, telephone numbers, and addresses, including but not limited to those in the Address Book];
> 2. [All names of persons the user of the phone has contacted];
> 3. [All pictures or videos sent or received over the phone];
> 4. [Content of all text messages sent or received over the phone];
> 5. [Content of all voice mail messages on the phone];

---

[3] Which is not to say that the warrant could not be written more narrowly, *e.g.*, listing the five identified particular categories, and then describing them as fruits, etc. of the six enumerated crimes. In such a fashion, the searching officers' discretion would be more clearly circumscribed. Generally-speaking, the phrase "included but not limited to" is more appropriate to discovery in civil litigation than to descriptions in search warrants.

[4] The Government does not argue otherwise.

5

      6. [Anything prepared on the Tasks or MemoPad features of the phone];
      7. [Anything on the Calendar feature of the phone];
      8. [All passwords needed to access the phone];
      9. [All financial records of any kind on the phone];
      10. [Any indicia of control over the phone];
      11. [Anything showing who used or owned the phone at the time any of the items to be searched for were created, edited, or deleted]; [and]
      12. [Anything on the phone relating to historical use of the internet].

As a preliminary matter, I am quite sure it makes no sense to talk about fruits of gun crimes being found in a cell phone, and I am also doubtful that anything found in a cell phone would be an instrumentality of a crime.[5] Thus, I think the "fruits" and "instrumentalities" language is essentially irrelevant.

As a further preliminary matter, I have carefully reviewed the application, affidavit[6] and warrant. *Cf.* D.I. 60 at 8 (suggesting I ought to read Attachment B).

I have to wonder exactly how the Government expected to conduct the search of the phones. It is clear that the case agent was not going to do the search himself. "A thorough search of digital media, such as the [cell phones], for evidence or instrumentalities of a crime commonly requires a qualified expert to conduct the search in a laboratory or other controlled environment." (Affidavit, ¶ 16). Indeed, it seems unlikely that the case agent would even be present when computer forensics were run on the phones. Thus, unlike in some situations where

---

[5] The application for the search warrant has the basis of the search identified as "evidence of a crime" and "property designed for use, intended for use, or used in committing a crime."

[6] The affidavit is curious in some regards. The same boilerplate is repeated multiple times. *Compare* ¶ 15, ¶ 37, *and* ¶ 40. It seems as though at least some of the computer-related paragraphs originated in a DEA warrant. *Compare* ¶ 38 ("the Drug Enforcement Administration intends to use whatever data analysis techniques appear necessary [to do data analysis on the phones]) *with* ¶ 17 ("ATF intends to use whatever data analysis techniques appear necessary [to do data analysis on the phones]).

6

the case agent's knowledge of the case adds a gloss that limits the scope of literally broader descriptions of things to be seized, that situation does not appear to be applicable here. Instead, a computer analyst who knows little or nothing about the case would be trying to execute this warrant. The computer analyst is likely employed by ATF and so would know that the warrant concerns gun crimes.

The warrant authorizes a search through the entire contents of the cell phone. I do not think this is necessarily troubling by itself. Searches of homes for drugs or "mere evidence" allow extremely thorough searches. What is troubling is that there is no limit on what the search is for. It is not as though the affiant could not have come up with a particularized description of evidence to be seized. For example, consider if Attachment B had said something like:

> [Search for and seize the following from the cell phones]:
> 1. Any texts or emails or calendar entries or notes about a meeting on May 9, 2013;
> 2. Any photographs or videos of James Walker connecting him to possession of a firearm or ammunition, or showing Kevin Handy, Daniel Cornish, Devlyne King, Donald White, Derrick Sewell, Rakeem Conquest [and other specific individuals];
> 3. Any texts and emails to or from, or calendar entries about, Kevin Handy, Daniel Cornish, Devlyne King, Donald White, Derrick Sewell, Rakeem Conquest, [and other specific individuals];
> 4. Any texts or emails or internet searches [during a particular time period] about a Toyota Corolla [or the "specific rental car agency" – *see* ¶ 25];
> 5. Any internet searches between May 8, 2013, and May 28, 2013, relating to firearms;
> 6. Any indicia of control by James Walker over the phone at any time;
> 7. Cash financial transactions [above a certain amount] [from May 8, 2013, to May __, 2013, depending upon what the affiant would say was indicative of firearms trafficking]; and
> 7. All passwords needed to access the phone;
> All of which would be evidence of [the specified federal firearms offenses and conspiracy to commit [some of] the federal firearms offenses and aiding and abetting [some of] the federal firearms offenses.

While the search pursuant to the hypothetical Attachment B might have been just as intrusive as the one that actually occurred, the hypothetical Attachment B would have limited the

7

discretion of the searching agent or computer analyst to seize what he or she came across. For the most part, the actual warrant not only did not limit the scope of the search (which I do not think is a problem[7]), it also did not meaningfully limit the searching agent's or computer analyst's discretion in deciding the scope of the seizure.

The Government argues that the warrant was not a general warrant. For example, the Government states that the affidavit "'identified a time period during which the suspected offenses occurred.'" (D.I. 55 at 13). While that is true, that is also irrelevant because the warrant identified no time period, and did not incorporate the affidavit by reference.[8] Thus, the Government's citation to *United States v. Karrer*, 460 F. App'x 157, 161 (3d Cir. Feb. 1, 2012), does not help it. The Government also notes that there was fact evidence (as opposed to the affiant's expertise) in support of the idea that one of Defendant's cell phones had been used in furtherance of the criminal activity. (D.I. 55 at 14, presumably referring to Affidavit, ¶ 24). This fact, though, does not assist the Government in defending against the claim that the warrant was a general warrant.

The Government also states that the description of things to be seized was limited, because it should be understood, by reference to the various federal firearms statutes, that the warrant was limited to evidence that would prove the firearms crimes. The trouble with this

---

[7] Defendant states that the phones were not sufficiently connected to Defendant. (D.I. 60 at 6-7). One of them was seized from his person. That is more than enough. The other four were seized from his residence. Probable cause deals with probabilities. I think it is also general knowledge that people engaged in criminal activities often use disposible phones. Thus, while it is less than certain that Defendant was connected to the other four cell phones, finding them in his residence gave a reasonable basis to believe they were.

[8] Instead, the search warrant incorporated Attachments A and B by reference.

8

argument is that the description of the categories of things to be seized means that the decision as to what to seize or not is left to the agent or analyst. It is not a decision made by the issuing judge. The warrant, in my opinion, is a general warrant.

That is not the end of the matter, however. There is a preference for search warrants. It is clear, and has been for many years, that when an officer executes a search warrant, the evidence seized as a result will not be suppressed unless the officer's reliance on the warrant was unreasonable. There is only one possible argument as to why the officer's reliance on this particular search warrant might be said to be unreasonable. That would be when "'the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.'" *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001) (quoting *United States v. Williams*, 3 F.3d 69, 74 n.4 (3d Cir. 1993)). If that were the case, it would show that the officer executing the search could not have relied upon the existence of the warrant "in good faith." This is "objective good faith," not the officer's actual, or subjective, good faith. Simply because a warrant is a general warrant does not mean that the officer could not have relied upon it in good faith.[9]

I do not think I can say that the officer did not rely upon the warrant. In terms of "good faith," I consider that he obtained the warrant when, at the time, it was unclear whether he needed a warrant at all. The United States Magistrate Judge approved the warrant. *See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92, 422.57)*,

---

[9] I am aware that the Court reached a different conclusion in *United States v. Fleet Management*, 521 F.Supp. 2d 436, 445 (E.D. Pa. 2007). The Court's primary support for its conclusion was *United States v. Christine*, 687 F.2d 749, 758 (3d Cir. 1982), decided two years before *United States v. Leon*, 468 U.S. 897 (1984), which is the basis for the good faith exception. Thus, I do not think *Christine* is controlling on this point.

307 F.3d 137, 152 (3d Cir. 2002) (noting that the United States Magistrate Judges are "highly qualified," making it reasonable to rely upon their judgments). The uniform practice in this District is that search warrant applications are also reviewed and approved by Assistant U.S. Attorneys.[10] *See United States v. Tracey*, 597 F.3d 140, 153 (3d Cir. 2010) ("reasonable officer would also have confidence in the validity of the warrant after presenting it and having it approved by a [prosecutor] and the Magistrate Judge"). Searching of cell phones, like the searching of computers, involves complicated concepts and specialized expertise that is not the bread and butter of most firearms investigators. Despite what I believe are defects in the search warrant, and that the affidavit is not incorporated into the search warrant, the affidavit indicates a narrower purpose for the search. (*E.g.*, Affidavit, ¶¶ 34-35 [describing the evidence being looked for as being related to firearms and firearms trafficking] and ¶¶ 36 [describing the evidence being looked for as showing possession or use of the cell phone]). Finally, while I have concluded that the subject warrant is a general warrant, the Government was not without arguments as to why it was not, including the reference to firearms statutes in the description of things to be seized. I do not think that most federal "street agents" would know on their own whether the warrant was general. Thus, I do not think the officer's reliance upon the warrant was so unreasonable as to conclude that there was a lack of good faith in so relying.

Thus, the motion to suppress (D.I. 54) is **DENIED**. It is so **ORDERED** this 29 day of May 2015.

Richard G. Andrews
United States District Judge

---

[10] This practice has been uniformly followed for at least the last thirty years.

10